# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| L.B. FOSTER CO., | ) |
| Plaintiff, | ) |
| | ) No. 07 C 3692 |
| v. | ) |
| | ) Magistrate Judge Maria Valdez |
| TIE AND TRACK SYSTEMS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This diversity action premised upon breach of an alleged contract is before the Court on the parties' cross-motions for summary judgvment pursuant to Federal Rule of Civil Procedure ("Rule") 56. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Defendant Tie & Track Systems, Inc.'s ("Tie & Track") motion [Doc. No. 30] is granted, and Plaintiff L.B. Foster Co.'s ("L.B. Foster") motion [Doc. No. 40] is denied.

## FACTS

The following facts are either undisputed or are deemed admitted due to a party's failure to comply with Local Rule 56.1, which this Court strictly enforces. Tie & Track is an Illinois corporation with its principal place of business in the Northern District of Illinois. (LR 56.1(a)(3) ¶ 1.) L.B. Foster is a Pennsylvania corporation with its principal place of business in Pennsylvania. (*Id.* ¶ 2.)

On or about July 17, 2006, L.B. Foster received from Lake Charles Harbor and Terminal District a "Bid Package" for steel ties and related railroad products.[1] (*Id.* ¶ 3.) On or about August 2, 2006, L.B. Foster invited Tie & Track to submit pricing for the Lake Charles Harbor and Terminal District project (the "Lake Charles Project"). (*Id.* ¶ 4.) The e-mail stated: "Alan, here is the bid package. Pls [sic] let us know asap if you will be pricing this job. We plan on submitting our bid this PM via overnite [sic] courier." (*Id.* Ex. 1.B.)

On or about August 11, 2006, Alan Briggs of Tie & Track e-mailed David Sprinkle of L.B. Foster with a price quote for steel ties. (*Id.* ¶ 5.) This e-mail stated: "I have been out of the country for the last week, but, during that period, our people have been looking at the cost structure to check our prices. Following my e-mail to you on August 2nd,[2] I have used the same format and would like to submit the following revised prices." (*Id.* Ex. 1.C.) After listing the prices for nine types of railroad ties, the Briggs e-mail continues: "The above prices are delivered/Terms of Payment – to be agreed/Delivery – To be agreed/We hope you are successful with your bid. If you require additional information please call." (*Id.* ¶ 6, Ex. 1.C.) Tie & Track never submitted a formal bid to L.B. Foster for the Lake Charles Project. (*Id.* ¶ 16.)

At no time did the parties negotiate terms of payment, and the parties never agreed on any terms for payment pertaining to Tie & Track's price quote. (*Id.* ¶¶ 7, 10.) At no time did

---

[1] One of the Terms and Conditions listed in the Bid Package was: "Desired Delivery: 60 calendar days." (LR 56.1(b)(3)(C) Ex. A, at 2.) Pursuant to the Bid Package, Lake Charles Harbor & Terminal District "reserve[d] the right to award items separately, grouped or on an all-or-none basis and to reject any or all bids." (*Id.* at 4.) The Bid Package also provided: "Failure [of a bidder/supplier] to deliver within the time specified in the bid will constitute a default and may cause cancellation of the contract and/or the bid guaranty accompanying the bid shall be forfeited by the bidder." (*Id.* at 5.) Once Lake Charles Harbor & Terminal District determined that a supplier was in default, it "reserve[d] the right to purchase any or all products or services covered by the contract on the open market and to charge the SUPPLIER with cost in excess of the contract price." (*Id.*)

[2] This e-mail is not included in either party's exhibits.

the parties have any discussions, oral or written, regarding terms of delivery, and the parties never agreed on any delivery terms pertaining to Tie & Track's price quote. (*Id.* ¶¶ 8, 11.) Tie & Track never proffered any payment terms or delivery dates, and no payment terms or delivery dates were refused by L.B. Foster. (LR 56.1(b)(3)(C) ¶¶ 8-9.)

L.B. Foster submitted a bid on the Lake Charles Project, which included the prices quoted by Tie & Track. (*Id.* ¶ 4.) On August 18, 2006, L.B. Foster verbally notified Tie & Track that a portion of L.B. Foster's bid had been accepted by Lake Charles Harbor and Terminal District. (LR 56.1(a)(3) ¶ 17.) Only three of the nine items listed in Tie & Track's August 11, 2006 price quote were "accepted" by Lake Charles Harbor and Terminal District. (*Id.* ¶ 18.) L.B. Foster demanded that Tie & Track provide the three items of materials, but Tie & Track refused to deliver the items at the prices listed in the price quote. (*Id.* ¶ 19; LR 56.1(b)(3)(C) ¶ 7.) L.B. Foster ultimately paid Lake Charles Harbor and Terminal District $71,915.54 rather than imposing a penalty on its bid bond, and L.B. Foster also claims to have lost certain profits from the loss of its bid.[3] (LR 56.1(b)(3)(C) ¶ 11.)

---

[3] Tie & Track seeks to strike several paragraphs in L.B. Foster's statement of facts and affidavit in support, including its assertion of the amount of lost profits, on the basis that they are legal conclusions, undisclosed expert opinion, or hearsay. L.B. Foster, in turn, has moved to strike several paragraphs in Tie & Track's affidavit in support of its statement of facts, arguing that they do not state admissible facts for several reasons. Because the Court did not rely upon any of the facts sought to be stricken by the parties, Tie & Track's motion to strike certain paragraphs of the affidavit of Gregory Lippard [Doc. No. 47] and L.B. Foster's motion to strike the affidavit of Alan Briggs [Doc. No. 34] are dismissed as moot.

**DISCUSSION**

L.B. Foster's suit alleges it suffered damages by Tie & Track's failure to supply the three categories of steel ties it orally accepted on August 18 and seeks relief under theories of breach of contract and promissory estoppel. Tie & Track argues that L.B. Foster's breach of contract claim fails because no contract was formed between the parties; L.B. Foster has not proved the necessary elements in support of its promissory estoppel claim; and both claims are barred by the Illinois statute of frauds.

**A.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In response to "a properly supported motion for summary judgment," the non-movant "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact. *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996). In addition, "[c]onclusory

allegations and self-serving affidavits, without support in the record, do not create a triable issue of fact," *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002), and affidavits or depositions based on speculation, rumor, or conjecture are not sufficient to defeat a properly supported motion for summary judgment. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991).

**B.     BREACH OF CONTRACT[4]**

Tie & Track argues that summary judgment is should be granted as to L.B. Foster's breach of contract claim because no contract was formed. Tie & Track contends that there was no offer to be accepted by L.B. Foster because: (1) the August 11 e-mail was only a price quotation or "cost quote"; (2) the quote was expressly subject to agreement on essential payment and delivery terms; (3) Tie & Track viewed payment and delivery terms to be material; (4) Tie & Track did not view its price quote as an agreement between the parties; and (5) payment and delivery terms were never negotiated between the parties.

L.B. Foster responds that the e-mail was an offer, and L.B. Foster accepted three of the nine items included in the offer. L.B. Foster's response frames the dispute into one over whether or not the contract at issue was too indefinite to be enforced. *See, e.g., Bus. Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.*, 547 F.3d 882, 888 (7th Cir. 2008) ("A contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.") (citation and internal quotations omitted); *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1230 (7th Cir. 1995) ("If there is an offer and an acceptance,

---

[4]   The parties agree that Illinois law governs this dispute.

5

then however discrepant (within reason) their terms are, there is a contract, and the question is merely *what* the terms are.").

To that end, the bulk of L.B. Foster's brief is spent supplying the missing payment and delivery terms through the terms found in the Bid Package or in various UCC provisions.[5] But the issue is not whether the contract fails for indefiniteness, but whether a contract was formed at all, *i.e.*, whether Tie & Track's August 11 letter constituted an offer, and if so, whether L.B. Foster accepted that offer. "The general rule is that the party seeking to enforce an agreement has the burden of establishing the existence of the agreement." *C. Iber & Sons, Inc. v. Grimmett*, 248 N.E.2d 131, 133 (Ill. App. Ct. 1969).

In order to form a valid contract, "'an offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." *Bus. Sys. Eng'g*, 547 F.3d at 888 (citation omitted); *see Interstate Indus., Inc. v. Barclay Indus., Inc.*, 540 F.2d 868, 871 (7th Cir. 1976) ("Because the Uniform Commercial Code provides no guidelines as to when a communication will constitute an offer, we must look to case law and other authorities for guidance.").

In this case, Tie & Track argues that its price quote did not constitute an offer: "A mere quotation of price must be distinguished from an offer. . . . [W]hether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case." *Interstate Indus.*, 540 F.2d at 871 (internal quotation and citation omitted). In order for a price quotation to amount to an offer, "the offer

---

[5] L.B. Foster provides the following proposed gap fillers: (1) the Bid Package provided that the "desired delivery" was 60 calendar days; (2) the Illinois UCC provides that the time for delivery, if not agreed upon, "shall be a reasonable time" (810 Ill. Comp. Stat. § 5/2-309); and (3) the UCC provides that, if not agreed upon, "payment is due at the time and place at which the buyer is to receive the goods . . . ." (810 Ill. Comp. Stat. § 5/2-310).

6

must intend that the contract exist upon acceptance of the offer; that is, it must reasonably appear from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract." *Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc.*, 635 F. Supp. 1281, 1284 (N.D. Ill. 1986); *see McCarty v. Verson Allsteel Press Co.*, 411 N.E.2d 936, 943 (Ill. App. Ct. 1980) ("[W]here acceptance of a price quotation cannot, for some other reason, create an enforceable contract, the purchase order, not the price quotation, should be treated as the offer.").

"Prices and price factors quoted by suppliers to contractors for the purposes of aiding contractors to make bid estimates, without more specific terms, do not obligate the supplier to comply with any purchase order upon whatever terms and conditions the contractor may choose to offer at some undetermined date in the future." *Interstate Indus.*, 540 F.2d at 872 (internal quotation and citation omitted). An offer must "induce[ ] a reasonable belief in the recipient that he can, by accepting, bind the sender." *Architectural Metal*, 58 F.3d at 1229. "A lack of essential detail would negate such a belief, since the sender could not reasonably be expected to empower the recipient to bind him to a contract of unknown terms." *Id.* (stating that the essential terms of a contract for the sale of goods are the items to be sold, quantity, price, and delivery terms).

The Court concludes that Tie & Track's August 11 e-mail was a price quotation and not an offer. The e-mail lacked essential payment and delivery terms and thus could not have induced L.B. Foster to reasonably believe that its acceptance could bind Tie & Track to a contract. *See Architectural Metal*, 58 F.3d at 1229; *see also Interstate Indus.*, 540 F.2d at 872 (holding that an oral price quotation was not an offer where it did not include the time of acceptance of the "offer," the quantity to be ordered, the payment terms, or the time the supplier

7

promised to perform); *Respect Inc. v. Committee on the Status of Women*, 781 F. Supp. 1358, (N.D. Ill. 1992) (citations omitted) ("[P]rice, delivery date and quantity are generally thought to be 'essential' as a matter of law in all common-law contracts, and courts therefore refuse to supply those terms where the parties have not.").

When determining whether a communication is an offer or a preliminary negotiation, "any direct language indicating an intent to defer the formation of a contract, the definiteness or indefiniteness of the words used in opening the negotiation must be considered, as well as the usages of business, and indeed all accompanying circumstances." *Interstate Indus.*, 540 F.2d at 872-73 (internal quotation and citation omitted). In *Interstate Industries*, the Seventh Circuit held that a letter did not constitute an offer where it "(1) advised [plaintiff] of the availability; (2) specifically referred to its contents as a 'price quotation'; (3) contained no language which indicated that an offer was being made; and (4) failed to mention the quantity, the time of delivery or payment terms."[6] *Id.* at 873. Similarly, the language of the August 11 e-mail did not suggest that it was an offer. To the contrary, in addition to expressly declining to include essential terms, it stated that "our people have been looking at the cost structure to check our prices"; that Tie & Track "would like to submit the following revised prices." (*See* LR 56.1(a)(3) Ex. 1.C.)

---

[6] L.B. Foster argues that *Interstate Industries* is distinguishable on the basis that the price list in the case was sent unsolicited. But *Interstate* never indicated that the fact that the prices were unsolicited was dispositive to its central holding. Moreover, as Tie & Track points out, numerous cases relying upon *Interstate* involve situations where the price list was solicited. *See, e.g., Audio Visual Assocs. v. Sharp Elecs. Corp.*, 210 F.3d 254, 259 (4th Cir. 2000); *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 574 (6th Cir. 1999); *Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.*, 446 F. Supp. 2d 551, 569 (E.D. Va. 2006); *Gulf States Utils. Co. v. NEI Peebles Elec. Prods.*, 819 F. Supp. 538, 549 (M.D. La. 1993); *see also Dean Foods Co. v. Brancel*, 187 F.3d 609, 619 (7th Cir. 1999) (quoting Restatement (2d) of Contracts § 26, cmt. d (1981)) (holding that a price quotation is "'commonly understood as inviting an offer rather than making one, even when directed to a particular customer.'").

L.B. Foster argues that the contract between the parties did not fail for indefiniteness simply because the payment and delivery terms were to be agreed. L.B. Foster acknowledges that "delivery terms" were considered to be essential in *Architectural Metal*, but attempts to distinguish the present case by stating that the terms of delivery were "to be agreed" and relies upon the fact that the Bid Package provided that the "desired delivery" was 60 calendar days. L.B. Foster, however, offers no support for its contention that any terms contained in the Bid Package were incorporated into Tie & Track's "offer," which made no reference to the Bid Package.

The Court also finds that even if the August 11 e-mail were an offer, no contract was formed because L.B. Foster did not accept the offer's terms. It is well settled "that before any agreement can exist there must be an offer and acceptance thereof." *C. Iber & Sons*, 248 N.E.2d 133-34; *see Dean Foods Co. v. Brancel*, 187 F.3d 609, 617 (7th Cir. 1999) (quoting *Perritt Ltd. P'ship v. Kenosha Unified Sch. Dist., No. 1*, 153 F.3d 489, 493 (7th Cir. 1998)) ("We have held that for a valid contract to exist there must be an offer, 'a valid acceptance of the offer . . . and evidence that the parties agreed on the essential terms and conditions of the contract.'").

It is also well settled that "[a] purported acceptance of an offer which does not substantially accept the offer in accord with its terms is a counter offer requiring in its turn acceptance in order to constitute an agreement." *C. Iber & Sons*, 248 N.E.2d at 132-34 (holding that a general contractor's acceptance of only one of three areas of the subcontractor's bid amounted to a counteroffer); *see also Zeller v. First Nat'l Bank & Tr. Co.*, 398 N.E.2d 148, 149 (Ill. App. Ct. 1979) (holding that an acceptance which does not "comply strictly with the terms of the offer" and instead modifies its terms "constitutes a rejection of the original offer, and

9

becomes a counterproposal which must be accepted by the original offeror before a valid contract is formed.").

In this case, the original "offer" was for nine items of steel ties. It is not disputed that the "acceptance" was for only three of the nine items. It is also not disputed that Tie & Track rejected L.B. Foster's "counteroffer" of the three items. Thus, there is no issue of material fact in the record that a contract could not have been formed between the parties due to L.B. Foster's failure to accept the "offer."

L.B. Foster's argument that the UCC provides the missing contractual terms does not salvage its breach of contract claim. If, by their conduct, the parties had recognized the existence of a contract, the UCC gap fillers would have come into play. *See* 810 Ill. Comp. Stat. § 5/2-207; *Northrop Corp. v. Litronic Indus.*, 29 F.3d 1173, 1179 (7th Cir. 1994). But L.B. Foster has offered no evidence that the parties' conduct recognized a contract; indeed, the evidence in the record establishes that Tie & Track did not. Because no contract existed, as shown by the parties' conduct or otherwise, the missing terms cannot be supplied by the UCC.

The Court is also unpersuaded by L.B. Foster's argument that when a purposeful non-performance contributes materially to the non-occurrence of a condition, the non-occurrence is excused, citing to Section 245 of the Restatement (Second) of Contracts. L.B. Foster states that it accepted Tie & Track's offer to deliver the ties, but Tie & Track did not propose a delivery date despite the fact that it knew the Bid Package's delivery date was 60 calendar days, and Tie & Track also did not make any demands as to payment terms. L.B. Foster's reliance on Section 245 of the Restatement (Second) of Contracts is misplaced. That section "illustrate[s] situations where a party's failure to honor its duties to effect a contractual condition excuses the

performance of that condition." *Nat'l Labor Relations Bd. v. Local 554, Graphic Comm'ns Int'l Union*, 991 F.2d 1302, 1308 (7th Cir. 1993). L.B. Foster has not explained why Tie & Track's statement that the payment and terms were "to be agreed" imposed upon Tie & Track a duty to effect a contractual condition.

The Court therefore finds that there is no genuine issue as to any material fact that the August 11 e-mail did not constitute an offer that could be accepted by L.B. Foster; that even if the e-mail were an offer, it was not accepted by L.B. Foster; and that L.B. Foster's counteroffer was rejected. Therefore, no contract was formed between the parties, and Tie & Track is entitled to summary judgment on L.B. Foster's breach of contract claim.

**C.     PROMISSORY ESTOPPEL**

Tie & Track argues that L.B. Foster's promissory estoppel claim is deficient as a matter of law.[7] Illinois has developed a four-part test for a promissory estoppel claim: "A plaintiff must prove that (1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Kamboj v. Eli Lilly & Co.*, No. 05 C 4023, 2007 WL 178434, at *9 (N.D. Ill. Jan. 18, 2007) (internal quotations and citation omitted). "The Seventh Circuit, applying Illinois law, has emphasized, however, that '[p]romissory estoppel is not a doctrine designed to give a party . . . a second bite at the apple in the event that it fails to

---

[7] Tie & Track also argues that under Illinois law, the theory of promissory estoppel can only be used to support an affirmative defense, not a cause of action. The Court disagrees, consistent with the other courts in the Northern District of Illinois who have confronted this issue: "Absent further guidance from the Illinois Supreme Court, this Court assumes for purposes of this decision that a claim for promissory estoppel is still available in Illinois." *Kamboj v. Eli Lilly & Co.*, No. 05 C 4023, 2007 WL 178434, at *10 (N.D. Ill. Jan. 18, 2007) (recognizing that some Illinois intermediate appellate cases have held that promissory estoppel may only be used defensively, not as a vehicle for direct relief); *see Rehabcare Group East, Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, at *3 (N.D. Ill. Nov. 8, 2007); *TNT Logistics N.A., Inc. v. Bailly Ridge TNT, LLC*, No. 05 C 7219, 2006 WL 2726224, at *10 (N.D. Ill. Sept. 21, 2006); *LM Ins. Corp. v. Sourceone Group, Inc.*, 454 F. Supp. 2d 727, 741 (N.D. Ill. 2006).

prove a breach of contract. Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking.'" *Id.* "Where there is an (alleged) express oral contract concerning a subject, and no issue of consideration 'there is no gap in the remedial system for promissory estoppel to fill.'" *Id.*, 2007 WL 178434, at *10 (quoting *All-Tech Telecom Inc. v. Amway Corp.*, 174 F.3d 862, 869-70 (7th Cir. 1999)).

Tie & Track contends that its promise, in the form of a price quotation, could not reasonably be relied upon by L.B. Foster because the promise lacked material payment and delivery terms. Moreover, because there was no offer or acceptance by either party, L.B. Foster's promissory estoppel claim is not based upon a contractual relationship that is merely missing the element of consideration, and in fact L.B. Foster has not admitted that its breach of contract claim lacks the element of consideration. Finally, the price quote was not an unambiguous promise to deliver the goods at any time and in any manner chosen by L.B. Foster.

L.B. Foster's response offers no contrary evidence or argument. The entirety of the promissory estoppel section of L.B. Foster's brief is dedicated to establishing that a promissory estoppel claim remains viable under Illinois law, which this Court decided in L.B. Foster's favor. (*See* note 7, *supra*.) But the mere fact that the cause of action exists does not boost L.B. Foster over the summary judgment hurdle. L.B. Foster has an obligation to offer proof that the elements of promissory estoppel have been met in this case, and it has offered none. *See Larimer v. Dayton Hudson Corp.*, 137 F.3d 497, 500 (7th Cir. 1998) ("'If the non-moving party bears the burden of proof on an issue, . . . that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact.'") (citation omitted). The Court is "'not required to draw every conceivable inference from the record,'" *McCoy v. Harrison,* 341

F.3d 600, 604 (7th Cir. 2003) (citation omitted), nor must it "scour the record in search of evidence to defeat a motion for summary judgment." *Hall,* 276 F.3d at 354 n.4 (citation and internal quotation omitted). Summary judgment is therefore granted in Tie & Track's favor on L.B. Foster's promissory estoppel claim.

D. **STATUTE OF FRAUDS**

Finally, Tie & Track maintains that L.B. Foster's contract claim is barred by the statute of frauds. Pursuant to the Illinois Statute of Frauds:

> Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

810 Ill. Comp. Stat. § 5/2-201(1). "The documentation must enable an inference to be drawn that there *was* a contract, though once that has been established the parties are free to present oral evidence of the contract's terms, . . . all but the quantity term, which must be stated in the writing that establishes compliance with the statute of frauds." *Central Ill. Light Co. v. Consolidation Coal Co.*, 349 F.3d 488, 490-91 (7th Cir. 2003).

According to Tie & Track, L.B. Foster alleges a contract for the sale of goods over $500 but has not shown the existence of a writing signed by Tie & Track to memorialize the terms of the contract described in the Amended Complaint. L.B. Foster responds that Tie & Track's August 11, 2006 e-mail satisfies the requirements of the Statute of Frauds, citing the Committee Comments to Section 5/2-201 of the UCC, which state: "The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted" from the required writing. Again citing to the Committee Comments, L.B. Foster contends that

13

the writing requirement of the Statute of Frauds has been liberally interpreted by Illinois Courts, and that the contract itself need not be in writing: "[A]ll that was required was the document that provided solid evidence of the existence of a contract which contract itself could be oral."

L.B. Foster's argument, however, disregards that even under its construction, the August 11 writing describes only an offer predating the formation of the parties' alleged contract, which was formed (if at all) by L.B. Foster's oral acceptance on August 18. A written offer predating the formation of a contract may satisfy the statute of frauds but only if "the offeree had accepted in writing explicitly stating that he was accepting all the terms in the offer." *Central Ill. Light*, 349 F.3d at 490 (expressly distinguishing such a case "from one in which the acceptance is oral so that there is no written confirmation of the existence of a contract"). It is not sufficient that the August 11 e-mail "does not negate the contract's existence . . . . The writing must, remember, be 'sufficient to indicate' that there *is* a contract." *Id.* (emphasis in original). "[The contract's] existence must, at the very least, be more probable than not. . . . Otherwise the statute of frauds would have no application to a case in which the parties had exchanged documents in the course of negotiations; and that is not the law." *Id.*

The Court finds that even if there were an oral agreement between the parties, the August 11 e-mail is not a writing that would satisfy the Illinois statute of frauds. Summary judgment therefore must also be granted in Tie & Track's favor as to all of L.B. Foster's claims based upon the statute of frauds defense. *See Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 676 (7th Cir. 2005) (noting that a promissory estoppel claim must satisfy the statute of frauds).

## CONCLUSION

For the foregoing reasons, Defendant Tie & Track Systems, Inc.'s ("Tie & Track") motion for summary judgment [Doc. No. 30] is granted, and Plaintiff L.B. Foster Co.'s ("L.B. Foster") motion for summary judgment [Doc. No. 40] is denied.

**SO ORDERED.**

**DATE:** **March 31, 2009**

**ENTERED:**

*Maria Valdez*

**HON. MARIA VALDEZ**
**United States Magistrate Judge**